FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 0 8 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Courtney R. Pratten
Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, WA 98901
Telephone: (509) 454 -4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CHARMMORRO VIJAY STROTHERS,<br><br>          Defendant. | Case No.: 1:24-CR-02006-SAB<br><br>Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Courtney R. Pratten, Assistant United States Attorney for the Eastern District of Washington, and Defendant CHARMMORRO VIJAY STROTHERS ("Defendant"), both individually and by and through Defendant's counsel, Paul Shelton, Trial Attorney for the Federal Defenders of Eastern Washington and Idaho and agree to the following Plea Agreement.

Introduction

Defendant is presently charged in the Eastern District of Washington by Indictment, filed February 7, 2024, with Wire Fraud, in violation of 18 U.S.C. § 1343, and False Personation of an Officer or Employee of the United States, in violation of 18 U.S.C. § 912.

PLEA AGREEMENT - 1

Defendant is also charged by the State of Washington, in Pierce County Superior Court. Defendant is charged by Information (case number 23-1-02622-7), filed on September 8, 2023, with Theft in the First Degree in violation of RCW 9A.56.020(1)(b) and 9A.56.030(1)(a), and three counts of Identity Theft in the First Degree in violation of RCW 9.35.020(1)(2)(5).

Defendant wishes to resolve all these pending federal and state charges as part of a single, global resolution. The United States Attorney's Office for the Eastern District of Washington and the Pierce County, Washington, Prosecuting Attorney's Office agree to such a resolution, as set forth herein.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on February 7, 2024, which charges Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, a Class C felony.

Defendant understands that the following potential penalties apply:

      a.    a term of imprisonment of not more than 20 years;

      b.    a term of supervised release of not less than 3 years;

      c.    a fine of up to $250,000;

      d.    restitution; and

      e.    a $100 special penalty assessment.

2.    Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

PLEA AGREEMENT - 2

b.    3 years in prison if the offense that resulted in the term of
Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of
Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

PLEA AGREEMENT - 3

4.    Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's

PLEA AGREEMENT - 4

1    conviction and sentence, and that an attorney will be appointed at no cost if

2    Defendant cannot afford to hire an attorney.

3          Defendant understands and agrees that any defense motions currently

4    pending before the Court are mooted by this Plea Agreement, and Defendant

5    expressly waives Defendant's right to bring any additional pretrial motions.

6          6.    Elements of the Offense

7          The United States and Defendant agree that in order to convict Defendant of

8    Wire Fraud, in violation of 18 U.S.C. § 1343, the United States would have to

9    prove the following beyond a reasonable doubt.

10               a.    *First*, between on or about August 14, 2023, and through on or

11                     about August 15, 2023, within the Eastern District of

12                     Washington and elsewhere, Defendant knowingly devised and

13                     participated in a scheme or plan to defraud for the purpose of

14                     obtaining money or property by means of false or fraudulent

15                     pretenses, representations, or promises;

16               b.    *Second*, the statements made as part of the scheme were

17                     material; that is, they had a natural tendency to influence, or

18                     were capable of influencing, a person to part from money or

19                     property;

20               c.    *Third*, the defendant acted with the intent to defraud, that is, the

21                     intent to deceive and cheat; and,

22               d.    *Fourth,* the defendant used, or caused to be used, an interstate

23                     wire communication to carry out or attempt to carry out an

24                     essential part of the scheme.

25          7.    Factual Basis and Statement of Facts

26          The United States and Defendant stipulate and agree to the following: the

27    facts set forth below are accurate; the United States could prove these facts beyond

28

PLEA AGREEMENT - 5

1  a reasonable doubt at trial; and these facts constitute an adequate factual basis for
2  Defendant's guilty plea.
3      The United States and Defendant agree that this statement of facts does not
4  preclude either party from presenting and arguing, for sentencing purposes,
5  additional facts that are relevant to the Sentencing Guidelines computation or
6  sentencing, unless otherwise prohibited in this Plea Agreement.
7      On August 14, 2023, A.Z. of Yakima, Washington, received a voicemail on
8  her phone from a phone number unknown to her that was calling from outside the
9  Eastern District of Washington. A.Z. was able to access the voicemail the
10  following day and the caller indicated he was a sergeant with the Yakima County
11  Sheriff's Department. The caller stated there was a matter requiring A.Z.'s
12  immediate attention. He referenced A.Z.'s maiden name on the voicemail.
13      A.Z. called the number back on August 15, 2023, and spoke with an
14  individual who stated he was a sergeant from the Yakima Police Department. The
15  individual said A.Z. had missed a court appearance and she was in contempt of
16  court with a failure to appear arrest warrant. At the time, A.Z. did not have an
17  active warrant for her arrest. The caller instructed A.Z. to drive to Egley's Bail
18  Bonds, located at 18 Staff Sergeant Pendleton Way, Yakima, Washington, to pay
19  her alleged bond amount of $14,000.00.
20      A.Z. remained on the phone with the individual while she withdrew
21  $14,000.00 in cash from her bank account and then proceeded to drive to Egley's
22  Bail Bonds. As she was proceeding to Egley's the individual, who remained on the
23  phone with A.Z., told her to report to the Yakima County Jail Parking lot. This
24  location is across the street from Egely's. After A.Z. arrived in the parking lot,
25  Defendant, who was unknown to A.Z., approached her on foot. A.Z. then gave
26  Defendant an envelope containing $14,000.00 and in turn, he provided her a
27  handwritten receipt dated August 15, 2023. The receipt read that $14,000.00 was
28  received from "Egley's Bail Bond" for "ETA-CV-1004 COC-CV-2181." The

PLEA AGREEMENT - 6

1  "from" line of the receipt read "From: Margese Palmer To: A.Z." The receipt
2  appeared to have been issued from a standard receipt book and it was numbered
3  "111120." After the exchange with A.Z., Defendant departed the scene on foot.

4      A.Z. left the location and began to make her way to the Yakima County
5  Sherriff's Office. She was still on the phone with the individual who had told her
6  there was an active warrant out for her arrest when another call came across her
7  phone. She answered the second call and another unknown individual indicated a
8  second felony warrant had been issued for A.Z.'s arrest and she was required to
9  pay $25,000.00 to prevent her incarceration. A.Z. turned around and went to
10  withdraw the new and higher amount from two of her personal bank accounts.
11  Then, as instructed, she returned to the Yakima County Jail parking lot where
12  Defendant again met her on foot, and she handed him a second envelope
13  containing now $25,000.00 in cash. A.Z. attempted to obtain identification
14  information from Defendant, such as a badge number, but he indicated he could
15  not provide that information because he was a U.S. Marshall. Defendant departed
16  the scene immediately thereafter.

17      Information gathered from various surveillance systems gave law
18  enforcement the information needed to identify the vehicle Defendant was driving
19  when he met A.Z.  Law enforcement was able to determine Defendant had rented a
20  Black Honda CRV from Sea-Tac Airport Avis/Budget on August 13, 2023, with a
21  scheduled return date of August 18, 2023. Surveillance gathered also showed
22  Defendant then drove the vehicle in Yakima, Washington, in the Eastern District of
23  Washington, on August 14, 2023, and again on August 15, 2023, when he was
24  meeting A.Z. Law enforcement contacted Avis/Budget at Sea-Tac Airport and
25  obtained a copy of Defendant's license from the rental car company, and then A.Z.
26  subsequently identified Defendant by his driver's license photo as the man who she
27  paid $39,000.00 dollars.

28

PLEA AGREEMENT - 7

1    On August 17, 2023, officers from the Puyallup, Washington Police
2  Department were dispatched to the Puyallup Police Department (PPD) lobby
3  regarding a report of fraud from the CJ Johnson Bail Bonds, 620 S. 11th Street,
4  located in Tacoma, Washington, in the Western District of Washington.

5    A representative from CJ Johnson Bail Bonds reported she had spoken with
6  a woman named K.R. who said an individual claiming to be a Puyallup Police
7  Officer had contacted her. The subject told K.R. a warrant was issued for her
8  arrest, and that she needed to make a $45,000.00 payment to avoid incarceration.
9  K.R. subsequently met Defendant in-person and paid him $45,000.00 as she had
10 been instructed.

11    Law enforcement contacted K.R., who reported that on August 16, 2023, she
12 got a phone call informing her a federal arrest warrant was issued because of her
13 failure to appear as an expert witness. K.R. said after the first call she received
14 several follow-up calls, and her caller ID on her phone showed the number to be
15 from the Puyallup Police Department. K.R. said she was concerned this was a
16 scam, but she paid the alleged bond because of the valid information provided on
17 the call and her concern for her reputation. K.R. confirmed that on August 17,
18 2023, she withdrew $45,000.00 from her bank account and met Defendant in the
19 parking lot of CJ Bail Bonds. She handed over the $45,000.00 payment in an
20 envelope and Defendant provided her with a receipt. Defendant then walked to a
21 dark color vehicle and drove from the scene.

22    Law enforcement subsequently got a search warrant from Pierce County,
23 Washington for call detail records, location, and subscriber information associated
24 with phone number ending in 2036. Subsequent investigation showed this number
25 to be Defendant's cell phone. The records received showed that on August 13,
26 2023, Defendant's phone was in and around Atlanta, Georgia. On August 15, 2023,
27 his phone utilized cell sites in Yakima, Washington. Then on August 17, 2023,
28 data from his phone indicated he was in the immediate vicinity of CJ Johnson Bail

PLEA AGREEMENT - 8

Bonds in Tacoma, Washington. Moreover, on August 17, 2023, at 12:47pm, which is when K.R. arrived at CJ Johnson Bail Bonds for the first time, Defendant's phone received an incoming call during which his phone utilized a cell tower less than 100 meters from the bail bonds building.

By August 18, 2023, after additional investigation, law enforcement had identified Defendant as the individual who had taken money from both A.Z. and K.R. Knowing Defendant's intended rental car return-date, law enforcement from the Eastern District of Washington traveled to Sea-Tac International Airport, 17801 International Boulevard, Seattle, Washington, where they, and members of the Yakima Police and Sea-Tac Airport Police, located and arrested Defendant as he arrived at the airport On August 18, 2023. During a search incident to arrest officers located the following materials in Defendant's carryon bag: (1) a receipt booklet containing a copy of the receipt issued to A.Z. for $14,000.00; (2) $59,000.00 in U.S. Currency; and (3) Defendant's Georgia identification.

Defendant admits his participation in the scheme outlined above caused a loss of $39, 000.00 to A.Z. Defendant further agrees his participation in the scheme outlined above caused a loss of $45,000.00 to K.R. Defendant further agrees an essential part of the scheme to defraud A.Z. and K.R. was carried out using interstate wire communications, or cell phone and/or landline communication measures.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Count 2 of the Indictment filed on February 7, 2024, which charges Defendant with False Personation of an Officer or Employee of the United States, in violation of 18 U.S.C. § 912.

PLEA AGREEMENT - 9

1  The United States Attorney's Office for the Eastern District of Washington

2 agrees not to bring additional charges against Defendant based on information in

3 its possession at the time of this Plea Agreement that arise from conduct that is

4 either charged in the Indictment or identified in discovery produced in this case,

5 unless Defendant breaches this Plea Agreement before sentencing.

6  The Pierce County Prosecutor's Office agrees that following sentencing in

7 this matter, it will move to dismiss the charges in Information 23-1-02622-7, filed

8 in the Superior Court of Washington for Pierce County unless Defendant breaches

9 this Plea Agreement before sentencing or either party is allowed to withdraw from

10 this plea.

11  9. United States Sentencing Guidelines Calculations

12  Defendant understands and acknowledges that the United States Sentencing

13 Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

14 Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.

15 The United States and Defendant agree to the following Guidelines calculations.

16  a. Base Offense Level

17  The United States and Defendant agree that the base offense level for Wire

18 Fraud is 7. U.S.S.G. § 2B1.1(a)(1).

19  b. Special Offense Characteristics

20  The United States and the Defendant agree that Defendant's base offense

21 level is increased by 6 levels because Defendant's conduct caused a loss over

22 $40,000.00. U.S.S.G. § 2B1.1(b)(1)(D).

23  The United States believes that Defendant's base offense level may increase

24 by 2 levels because Defendant's conduct involved theft from another person.

25 U.S.S.G. § 2B1.1(b)(3).

26  The United States and the Defendant agree that Defendant's base offense

27 level is increased by 2 levels because Defendant's conduct involved

28

PLEA AGREEMENT - 10

misrepresenting he was acting on behalf of a government agency.  U.S.S.G.
§ 2B1.1(b)(9)(A).

The United States believes Defendant's base offense level is increased by 2
levels because Defendant's conduct was effectuated by sophisticated means.
U.S.S.G. § 2B1.1(b)(10).

     c.    <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a downward
adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if
Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes
place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of
Defendant's personal responsibility for Defendant's
criminal conduct;

    iv.    provides complete and accurate information during the
sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written
notice to Defendant, the United States may elect not to recommend a reduction for
acceptance of responsibility if, prior to the imposition of sentence, Defendant is
charged with, or convicted of, any criminal offense, or if Defendant tests positive
for any controlled substance.

    d.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the
Guidelines or the application of any Guidelines enhancements, departures, or
variances.  Defendant understands and acknowledges that the United States is free
to make any sentencing arguments it sees fit, including arguments arising from

PLEA AGREEMENT - 11

1   Defendant's uncharged conduct, conduct set forth in charges that will be dismissed
2   pursuant to this Agreement, and Defendant's relevant conduct.

3          e.      Criminal History

4          The United States and Defendant have no agreement and make no
5   representations about Defendant's criminal history category, which will be
6   determined by the Court after the United States Probation Office prepares and
7   discloses a Presentence Investigative Report.

8      10.     Incarceration

9          The United States agrees to recommend a sentence no higher than 30
10  months.

11         The Defendant agrees to recommend a sentence no lower than 15 months.

12     11.     Supervised Release

13         The United States and Defendant each agree to recommend three years of
14  supervised release. Defendant agrees that the Court's decision regarding the
15  conditions of Defendant's Supervised Release is final and non-appealable; that is,
16  even if Defendant is unhappy with the conditions of Supervised Release ordered by
17  the Court, that will not be a basis for Defendant to withdraw Defendant's guilty
18  plea, withdraw from this Plea Agreement, or appeal Defendant's conviction,
19  sentence, or any term of Supervised Release.

20         The United States and Defendant agree to recommend that in addition to the
21  standard conditions of supervised release imposed in all cases in this District, the
22  Court should also impose the following conditions:

23         a.      The United States Probation Officer may conduct, upon
24                 reasonable suspicion, and with or without notice, a search of
25                 Defendant's person, residences, offices, vehicles, belongings,
26                 and areas under Defendant's exclusive or joint control.

27         b.      Defendant shall participate and complete such drug testing and
28                 drug treatment programs as ordered by the Court.

PLEA AGREEMENT - 12

c.     Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

d.     Defendant will not incur new debts or lines of credit without prior approval from the United States Probation Office.

e.     Defendant will provide the United States Probation Office access to any requested financial information and authorize the release of any financial information. Defendant must disclose all assets and liabilities to the United States Probation Office. Defendant must not transfer, sell, give away, or otherwise convey any asset without the advance approval of the United States Probation Office.

12.    Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 13

14.    <u>Restitution</u>

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664 to A.Z. of Yakima, Washington. Further, pursuant to 18 U.S.C. § 3663(a)(3), the Defendant voluntarily agrees to pay the agreed upon restitution amount to K.R. of Puyallup, Washington, in exchange for the United States not bringing additional potential charges, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the parties agree to the following:

(a)    <u>Restitution Amount and Interest:</u>

The parties agree that the Court should order Defendant to pay restitution in the total amount of $84,000.  The parties further agree that the total restitution obligation consists of: (a) restitution in the amount of $39,000 shall be paid to A.Z., and (b) restitution in the amount of $45,000 shall be paid to K.R.  The parties agree that Defendant's payment of $84,000 will fully satisfy his restitution obligation in this case. The interest on this restitution amount should be waived.

(b)    <u>Payments:</u>

The Court should order Defendant to pay $84,000 in restitution. The parties agree the Court will set a payment schedule based on his financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of his net monthly income towards his restitution obligation.

(c)    <u>Treasury Offset Program and Collection:</u>

Defendant understands the Treasury Offset Program collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716. Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not

PLEA AGREEMENT - 14

1    limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§

2    3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to

3    limit Defendant's ability to assert any specifically identified exemptions as

4    provided by law, except as set forth in this Plea Agreement.

5         Until a fine or restitution order is paid in full, Defendant agrees fully to

6    disclose all assets in which Defendant has any interest or over which Defendant

7    exercises control, directly or indirectly, including those held by a spouse, nominee

8    or third party.  Defendant agrees to truthfully complete the Financial Disclosure

9    Statement that will be provided by the earlier of 30 days from Defendant's

10   signature on this plea agreement or the date of Defendant's entry of a guilty plea,

11   sign it under penalty of perjury and provide it to both the United States Attorney's

12   Office and the United States Probation Office. Defendant expressly authorizes the

13   U.S. Attorney's Office to obtain a credit report on Defendant upon the signing of

14   this Plea Agreement. Until such time as the fine or restitution order is paid in full,

15   Defendant agrees to provide waivers, consents or releases requested by the U.S.

16   Attorney's Office to access records to verify the financial information.

17        Defendant understands and agrees that pursuant to 18 U.S.C. §3614,

18   Defendant may be resentenced to any sentence which might have originally been

19   imposed if the court determines that Defendant has knowingly and willfully

20   refused to pay a fine or restitution as ordered or has failed to make sufficient bona

21   fide efforts to pay a fine or restitution.

22              (d)    Notifications:

23        Defendant agrees to notify the Court and the United States of any material

24   change in his economic circumstances (e.g., inheritances, monetary gifts, changed

25   employment, or income increases) that might affect his ability to pay restitution.

26   *See* 18 U.S.C. § 3664(k). Further, Defendant agrees to notify the Financial

27   Litigation Unit of the United States Attorney's Office before Defendant transfers

28   any interest in property with a value exceeding $1,000 owned directly or indirectly,

PLEA AGREEMENT - 15

1  individually or jointly, by Defendant, including any interest held or owned under

2  any name, including trusts, partnerships and corporations. This obligation ceases

3  when the restitution is paid-in-full.

4      Defendant agrees to notify the United States of any address change within

5  30 days of that change. *See* 18 U.S.C. §3612(b)(F). This obligation ceases when

6  the restitution is paid-in-full.

7      15.   Judicial Forfeiture

8      Defendant agrees to voluntarily forfeit and relinquish to the United States all

9  right, title and interest in the following listed assets to the United States:

10      -  $39,000.00 U.S. currency

11      Defendant acknowledges that the currency listed above is subject to

12  forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

13  § 2461(c), because it constitutes or is derived from proceeds traceable to the

14  offense Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Count 1 of the

15  Indictment, to which Defendant is pleading guilty.

16      Furthermore, Defendant does not claim an interest in $20,700 in U.S.

17  currency held by the United States Secret Service (USSS) as evidence. Defendant

18  hereby stipulates and agrees to the turnover of the currency by USSS to the Clerk

19  of Court for the Eastern District of Washington to be applied to his restitution

20  obligation. Defendant agrees to execute any and all forms and pleadings necessary

21  to effectuate the USSS's turnover of the currency to the Clerk of Court.

22      Defendant agrees to take all steps as requested by the United States to pass

23  clear title to all assets to the United States and to testify truthfully in any forfeiture

24  proceeding. Defendant agrees to hold all law enforcement agents and the United

25  States, its agents, and its employees harmless from any claims whatsoever arising

26  in connection with the seizure, abandonment, or forfeiture of any asset covered by

27  this agreement. Defendant waives further notice of any federal, state or local

28

PLEA AGREEMENT - 16

1  proceedings involving the forfeiture of the seized assets the Defendant is agreeing

2  to forfeit in this Plea Agreement.

3      Defendant further agrees to waive all constitutional and statutory challenges

4  in any manner (including direct appeal, habeas corpus, or any other means) to any

5  forfeiture carried out in accordance with this Plea Agreement on any grounds,

6  including that the forfeiture constitutes an excessive fine or punishment. Defendant

7  knowingly and voluntarily waives his right to a jury trial on the forfeiture of the

8  assets. Defendant waives oral pronouncement of forfeiture at the time of

9  sentencing, and any defects that may pertain to the forfeiture.

10     It is the parties' mutual understanding that the United States Attorney's

11 Office will seek approval for restoration of the forfeited currency in the amount of

12 $39,000 to Defendant's restitution obligations. Defendant recognizes the final

13 decision to approve this application rests with the Attorney General, as delegated

14 to the Department of Justice's Money Laundering and Asset Recovery Section

15 (MLARS). *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*[1]

16     16.    Payments While Incarcerated

17     If Defendant lacks the financial resources to pay the monetary obligations

18 imposed by the Court, Defendant agrees to earn money toward these obligations by

19 participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

20     17.    Additional Violations of Law Can Void Plea Agreement

21     The United States and Defendant agree that the United States may, at its

22 option and upon written notice to the Defendant, withdraw from this Plea

23 Agreement or modify its sentencing recommendation if, prior to the imposition of

24

---

25 [1] As agreed herein, the additional $20,700 held by USSS as evidence shall be

26 turned over by the USSS to the Clerk of the Court to be applied to Defendant's

27 restitution obligation. Accordingly, the $20,700 held by USSS is not subject to

28 restoration approval by MLARS.

PLEA AGREEMENT - 17

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.    this Plea Agreement shall become null and void;

      b.    the United States may prosecute Defendant on all available charges;

      c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another

PLEA AGREEMENT - 18

1                 charging instrument, or were not charged because of this Plea

2                 Agreement; and

3        d.      the United States may file any new charges that would

4                 otherwise be barred by this Plea Agreement.

5       The decision to pursue any or all of these options is solely in the discretion

6 of the United States Attorney's Office.

7       Defendant agrees to waive any objections, motions, and/or defenses

8 Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

9 charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

10 dismissed, including any claim that the United States has violated Double

11 Jeopardy.

12       Defendant agrees not to raise any objections based on the passage of time,

13 including but not limited to, alleged violations of any statutes of limitation or any

14 objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

15 Amendment.

16       20.    <u>Integration Clause</u>

17       The United States and Defendant acknowledge that this document

18 constitutes the entire Plea Agreement between the United States and Defendant,

19 and no other promises, agreements, or conditions exist between the United States

20 and Defendant concerning the resolution of the case.

21       This Plea Agreement is binding only on the United States Attorney's Office

22 for the Eastern District of Washington and the Pierce County Prosecutor's Office,

23 and cannot bind other federal, state, or local authorities.

24       The United States, the Pierce County Prosecutor's Office, and Defendant

25 agree that this Agreement cannot be modified except in a writing that is signed by

26 the United States, the Pierce County Prosecutor's Office, and Defendant.

27 //

28 //

PLEA AGREEMENT - 19

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    $\overline{5/8/24}$
Courtney R. Pratten                Date
Assistant United States Attorney

Agreed and submitted on behalf of the Pierce County Prosecutor's Office.

Mary Robnett
Pierce County Prosecuting Attorney

_____    _____
Matthew Thomas                Date
Pierce County Deputy Prosecutor

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    $\overline{5/8/24}$
Charmmorro Vijay Strothers        Date
Defendant

PLEA AGREEMENT - 20

    I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____       _____

Paul Shelton                            Date

Attorney for Defendant

PLEA AGREEMENT - 21